**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

LIZETTE D.,

        Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

Case No. 2:22-cv-05166 (BRM)

**OPINION**

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is an appeal by Plaintiff Lizette D. ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner")[1] denying her applications for Social Security Disability Insurance Benefits under Title II of the Social Security Act (the "Act") and Supplemental Security Income under Title XVI of the Act. (ECF No. 1.) This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g). Having considered the submissions of the parties without oral argument, pursuant to Local Civil Rule 9.1(f), and for the reasons set forth below and for good cause shown, the Commissioner's decision is **AFFIRMED**.

---

[1] Upon the Appeals Council's Order denying Plaintiff's request for a review of the decision of Administrative Law Judge Dina R. Loewy ("Judge Loewy"), the ALJ's decision became the final decision of the Commissioner. (ECF No. 3-2 (Hearing Tr.) at 15–29.)

I.    BACKGROUND

A.    Procedural History

This case arises out of Plaintiff's challenge to the administrative decision of the Commissioner regarding her application for a period of disability, disability insurance benefits, and supplemental security income.

On October 2, 2019, Plaintiff filed concurrent applications for a period of disability and disability insurance benefits under Title II, and for social security income under Title XVI.[2] (ECF No. 3-2 (Hearing Tr.) at 15.) In both applications, Plaintiff alleged a period of disability commencing on March 26, 2019. (*Id.*) Plaintiff's applications were initially denied on January 2, 2020, and upon reconsideration on April 22, 2020. (*Id.*) Plaintiff subsequently filed a written request for a hearing. (*Id.*) On June 22, 2021, Administrative Law Judge Dina R. Loewy ("Judge Loewy") held an online video hearing, due to the COVID-19 pandemic, with the consent of Plaintiff. (*Id.*) All parties, including an impartial vocational expert, participated. (*Id.*) Plaintiff appeared by video and testified at the hearing. (*Id.*) Plaintiff's attorney was present at the hearing. (*Id.*)

Judge Loewy issued a decision on November 2, 2021, finding Plaintiff was not disabled within the meaning of the Act. (*Id.* at 15–29). On June 24, 2022, the Appeals Council denied Plaintiff's request for review of the decision, rendering Judge Loewy's decision final. (*Id.* at 1–6). Having exhausted her administrative remedies, Plaintiff filed an appeal with this Court on August 23, 2022. (ECF No. 1). The administrative record was filed thereafter. (ECF No. 3.) On January 2,

---

[2] Regulations for disability insurance and supplemental income benefits are virtually identical. For the purposes of this appeal, further citations will only be made to the disability insurance benefits regulations regarding disability evaluation, 20 C.F.R. § 404.1501, *et seq*. The parallel supplemental income benefits regulations are found under 20 C.F.R. § 416.901, *et seq*.

2023, Plaintiff filed a brief in support of her appeal. (ECF No. 7.) On February 17, 2023, the Commissioner filed an opposition. (ECF No. 8.)

**B.     Factual Background**

Plaintiff was born on December 10, 1970, making her forty-eight years old on the alleged disability onset date of March 26, 2019. (Hearing Tr. at 27.) Plaintiff had a limited education and performed past work as a manager of a retail store and salesperson of general hardware. (*Id.*) Both are generally performed at the "light exertional" level, but Plaintiff performed at a "medium exertional" level. (*Id.*) Plaintiff achieved average performance in those positions during the relevant period. (*Id.*) However, Plaintiff has not performed substantial gainful activity since the alleged onset date.[3] (*Id.* at 18.)

When Plaintiff filed for benefits in October 2019, she claimed to have the following severe impairments, which significantly limited Plaintiff's basic work activities: degenerative disc disease; right shoulder tendinosis; carpal tunnel syndrome; diabetes mellitus; hypertension; major depressive disorder; and obesity. (*Id.*) The record also documents Plaintiff's non-severe but medically determinable impairments, including hyperlipidemia, fatty liver, and kidney stones. (*Id.*) Plaintiff was prescribed medication for her hyperlipidemia, as well as her fatty liver, and when taking those medications, her conditions cause no symptoms. (*Id.*)

1. Plaintiff's Testimony

---

[3] Plaintiff earned $1087 in the second quarter of 2019; $435 in the third quarter of 2019; and $100 in the first and third quarters of 2020 in her part-time position at Home Depot. (Tr. at 18.) Plaintiff also earned $2458 in the third quarter of 2020 and $1900 in the fourth quarter of 2020 from her part-time position with Tag Real Estate Management. (*Id.*) However, as Plaintiff's income did not exceed the monthly thresholds for 2019 and 2020, Judge Loewy found she has not engaged in "substantial gainful activity" since the alleged disability onset date. (*Id.*)

At the June 22, 2021 hearing, Plaintiff testified generally about her condition. (*Id.* at 22.) Plaintiff testified she was unable to work due to pain, muscle spasms, and pinched nerves in her neck and back. (*Id.*) She could walk up to one block, stand or sit for up to ten or fifteen minutes, and lift or carry up to a gallon of milk. (*Id.*) As for her mental condition, Plaintiff explained she had difficulty going outside and needed to mentally prepare herself before doing so. (*Id.*) She would hear things and see things, oftentimes rendering her unable to concentrate or think. (*Id.*) On a typical day, Plaintiff claimed she would get up, get dressed, have coffee, and daydream the remainder of the day. (*Id.*) She went grocery shopping, and her son and sister-in-law helped with laundry. (*Id.*) Plaintiff maintained part-time positions during 2019 and 2020, and she was able to dress, bathe, and groom herself; manage simple meal preparation; and use public transportation. (*Id.*)

### 2. Plaintiff's Medical Record

Regarding Plaintiff's allegations of degenerative disc disease, a March 2019 MRI of Plaintiff's cervical spine revealed a multi-level disc disease, most prominent at the C5-6 level. (*Id.*) After she presented at the emergency department with worsening and radiating neck pain "a few weeks later," she was hospitalized and underwent a C5-6 anterior cervical discectomy and fusion. (*Id.*) The following month, Plaintiff reported doing well and an examination revealed normal range of motion, 5/5 strength, and no neurological deficits. (*Id.*) Then, in June 2019, Plaintiff complained of neck pain, but overall, her physical examination presented within normal limits. (*Id.*) By July 2019, Plaintiff again complained of back and right arm pain, and she demonstrated upper extremity weakness on examination. (*Id.*) However, by September 2019, even though she also complained of flank pain, she had an essentially normal physical examination. (*Id.*) Again, in January 2020, Plaintiff continued to complain of neck and bilateral arm pain but continued to have normal

physical examinations. (*Id.*) An MRI of Plaintiff's cervical spine in January 2020 revealed no evidence of hardware failure; moderate bilateral foraminal stenosis at C5-6; and moderate right C3-4 foraminal stenosis. (*Id.*) That same month, Plaintiff had been hospitalized for COVID-19 related pneumonia. (*Id.*)

In the months that followed, Plaintiff began complaining of right shoulder and elbow pain with swelling, muscle spasms, and back pain with radiculopathy, which related to her allegations of right shoulder tendonitis and carpal tunnel syndrome. (*Id.* at 23.) However, no abnormalities showed upon initial examination. (*Id.*) A June 2020 imaging of the right shoulder showed supraspinatus calcific tendonitis, but no fracture or dislocation. (*Id.*) A July 2020 physical examination for right shoulder pain, radiating lower back pain, and leg edema was normal. (*Id.*) In October 2020, Plaintiff reported relief in her left arm post-surgery, but began reporting right-sided neck and arm pain, including dropping objects. (*Id.*) She denied having problems with fine motor activities. (*Id.*)

In November 2020, Plaintiff complained of right shoulder, neck and lower back pain with another treatment provider. (*Id.*) A physical examination of her cervical spine revealed tenderness and decreased range of motion, but no motor deficits, intact sensation, and negative orthopedic tests. (*Id.*) An examination of her right shoulder revealed reduced range of motion, but no other abnormalities. (*Id.*) Plaintiff had a normal lumbar spine examination and normal gait. (*Id.*) The following month, Plaintiff reported pain in her bilateral hands and down her right arm. (*Id.*) She then received a cervical epidural injection at C7-T1 and underwent an epidurography. (*Id.*) An electrodiagnostic study revealed evidence of bilateral moderate median sensory nerve entrapment neuropathy at the wrists, consistent with carpal tunnel syndrome. (*Id.*)

Plaintiff reported a 90% improvement in February 2021 after an epidural injection. (*Id.*) However, she also reported swelling in her bilateral hands, as well as lower back pain that radiated down her legs. (*Id.*) A physical examination, again, revealed decreased range of motion, but no motor deficits, intact sensation, and negative orthopedic tests. (*Id.*) It also demonstrated a normal lumbar spine examination and a normal gait. (*Id.*) Also in February 2021, Plaintiff presented reporting right shoulder pain and exhibited decreased range of motion, pain with impingement, but 5/5 strength and negative orthopedic tests. (*Id.*) She received a cortisone injection for her right shoulder, which she later reported had helped for a week. (*Id.*)

In March 2021, Plaintiff also underwent another cervical epidural injection and epidurography. (*Id.*) In April 2021, Plaintiff reported improvement from the injection and that her right upper extremity numbness was resolving. (*Id.*) However, Plaintiff further reported lower back pain radiating down her right buttock and leg, for which she had previously done twelve sessions of physical therapy. (*Id.*) Her examination was essentially normal, except for tenderness at her cervical and lumbar spines, decreased range of motion of her cervical spine, and slightly diminished sensation in her right lower extremity. (*Id.*) In June 2021, Plaintiff reported bilateral lower extremity swelling and pain. (*Id.*) This presented as bilateral GSV reflux in a venous ultrasound. (*Id.*) Her physician ordered a vein ablation and varithena; however, there is no evidence in the record that this was performed. (*Id.*)

Regarding her other physical impairments, imaging from January 2020 shows no obstructive uropathy or evidence of recently passed genitourinary calculus as it relates to her previous bout with kidney stones. (*Id.*) With respect to Plaintiff's hypertension, she has had high blood pressure levels at various office visits, but stated she failed to take her medication at times. (*Id.*) She was hospitalized for high blood pressure in October 2020. (*Id.*) At 5'2" and 200 pounds,

Plaintiff's Body Mass Index is over 30, and therefore, she is considered obese. (*Id.* at 24.) Plaintiff had an exacerbation of diabetes, requiring insulin, around the time of her COVID-19 hospitalization. (*Id.*)

Plaintiff's medical record also demonstrates her mental impairments result in some degree of functional limitation, just not to the extent alleged. (*Id.*) In December 2019, Plaintiff was evaluated by Dr. Joyce Echo, an agency psychiatric consultative examiner. (*Id.*) Plaintiff reported to Dr. Echo that she experienced an onset of depression ten years prior, but explained she stopped treatment after feeling better and returning to work. (*Id.*) Thereafter, Plaintiff's depression returned, and she began experiencing symptoms of depression as well as auditory hallucinations, restless sleep, anxiety, and skin picking. (*Id.*) Plaintiff explained, in the face of her depression and hallucinations, she was able to drive; take public transportation; dress, bathe, and groom herself; get assistance from family members with household chores; and perform simple meal preparation. (*Id.*) She was also able to minimally socialize with friends and keep track of her medications but could not engage in hobbies other than watching videos and listening to music. (*Id.*) During Dr. Echo's examination, Plaintiff exhibited goal-directed thoughts; adequate auditory comprehension, insight, and judgment; limited affect; and a mood notable for dysphoria and tearfulness. (*Id.*) Plaintiff also showed mild memory retrieval deficits and slowed cognitive processing. (*Id.*)

During an intake evaluation in July 2020, Plaintiff expressed a want to treat with both a therapist and psychiatrist. (*Id.*) She reported trouble sleeping, depression, and lack of energy. (*Id.*) A mental status examination revealed cooperative and attentive behavior; depressed mood; intact memory, concentration, insight, and judgment; and normal intelligence. (*Id.*) Thereafter, in September 2020, Plaintiff's psychiatric evaluation reflected a depressed mood but intact memory, goal-directed thought process, and no hallucinations. (*Id.*) Throughout 2020, Plaintiff claimed to

hear voices causing her poor sleep, hallucinating at times, and continued anxiety and depression. (*Id.*)

In January 2021, Plaintiff began reporting experiencing distorted perceptions, low energy, trouble getting out of bed, and poor sleep. (*Id.*) Then, in the following month, Plaintiff stated that her medication was working, her hallucinations had diminished, and her depression was less severe. (*Id.*) In March 2021, Plaintiff expressed that her depression was better, but she still could not sleep and her paranoia was getting worse. (*Id.*) At Plaintiff's subsequent visits with her psychiatrist throughout 2021, she reported that her sleep and paranoia improved but she still heard voices. (*Id.*) In May and June of 2021, Plaintiff, again, reported that her medications were working, the voices decreased to almost nothing, and her visions were less pronounced than before. (*Id.*) Plaintiff was feeling emotionally better and her medication was working well. (*Id.* at 25.)

Treatment notes from her primary care provider, Jerry Jurado, M.D., spanning from March 2019 through July 2021, note that Plaintiff denied hallucinations. (*Id.*) In July 2020, Plaintiff reported at Hoboken University Medical Center ("HUMC") Health Center that she had not taken any psychotropic medications for sixteen years. (*Id.*) Instead, Plaintiff was prescribed anti-psychotic medication in March 2021.

### 3. Opinion Evidence

Judge Loewy considered the opinions of two psychiatric consultants and one medical consultant. The two psychiatric consultants opined Plaintiff had mild limitations in understanding, remembering, applying information and interacting with others, as well as moderate limitations in concentrating, persisting, maintaining pace, and adapting and managing oneself. (*Id.*) Judge Loewy found the opinions were somewhat supported and consistent with the medical evidence,

which demonstrated no greater than moderate limitations in mental functioning.[4] (*Id.*) Another medical consultant, at an initial examination, opined Plaintiff was limited to frequently climb ramps and stairs, balance, stoop, kneel, and crouch; occasionally crawl; and never climb ladders, ropes, or scaffolds. (*Id.*) However, the consultant, upon reconsideration, limited Plaintiff to medium work with the same postural limitations. (*Id.*) Judge Loewy found this opinion inconsistent with the record above, which demonstrated Plaintiff was limited to a reduced range of light work. (*Id.*) Accordingly, Judge Loewy found none of the consultants' opinions persuasive. (*Id.*)

Judge Loewy also considered Dr. Echo's opinion that Plaintiff had adequate auditory comprehension to understand multistep instructions; adequate expressive language; adequate social skills; and mild memory retrieval deficits. (*Id.*) Dr. Echo believed Plaintiff would have difficulty maintaining a reasonable pace in a consistent manner but could likely perform more simple routine tasks. (*Id.*) Judge Loewy found Dr. Echo's opinion to be generally consistent with her examination notes, but inconsistent with other evidence that supports a moderate limitation in social functioning. (*Id.*) Therefore, Judge Loewy determined Dr. Echo's opinion was persuasive only as to Plaintiff's limitation to simple routine work. (*Id.*)

Judge Loewy also considered the opinions of Plaintiff's treating physicians, Dr. Aditya Patel and Dr. Ramesh Babu. In April 2021, Dr. Patel opined that Plaintiff was limited to sedentary work and needed a job that permitted shifting positions and walking for ten minutes every ninety minutes. (*Id.*) Dr. Patel reported Plaintiff could never climb ladders; rarely twist, crouch, and squat; occasionally stoop; and frequently climb stairs. (*Id.*) Dr. Patel further determined Plaintiff could

---

[4] Judge Loewy believed Plaintiff's medical record revealed a moderate limitation in interacting with others, but a mild limitation in adapting or managing herself. (*Id.* at 25.)

only use her handle and finger 50% of the time; can never reach in any direction; will likely be off task 10% of the time, meaning absent about two days per month; and was capable of low stress work. (*Id.*) Judge Loewy found Dr. Patel's opinion unpersuasive because it was not supported by treatment records and other evidence. (*Id.*)

In April 2019, Plaintiff's treating neurosurgeon, Dr. Babu, opined that Plaintiff was unable to bend, lift, climb, or stand for long periods of time. (*Id.* at 26.) He believed that Plaintiff would be incapacitated for a period of six to eight weeks. (*Id.*) Judge Loewy found the opinion consistent with other evidence in the record, including Dr. Babu's own treatment records from Plaintiff's C5-6 anterior cervical discectomy and fusion in March 2019. (*Id.*) The opinion persuaded Judge Loewy that Plaintiff's condition improved after a short period of time, as corroborated by Plaintiff's subsequent examinations without significant abnormalities. (*Id.*)

Ms. Amy Coleman, a licensed clinical social worker, also provided an opinion on Plaintiff's condition. She opined in a check-off form medical source statement, dated July 2021, that Plaintiff was limited but satisfactory, or seriously limited, in almost all areas of mental, work-related functioning. (*Id.*) Ms. Coleman opined Plaintiff was unable to deal with normal work stress, deal with the stress of semi-skilled or skilled work, and use public transportation. (*Id.*) She also believed Plaintiff would likely be absent more than four days per month. (*Id.*) Judge Loewy called Ms. Coleman's opinion "vague" as it was not expressed in function-by-function terms or supported by clinical findings or mental assessments supporting her findings. (*Id.*) Accordingly, Judge Loewy found the opinion unpersuasive. (*Id.*)

### C.    ALJ Decision

Judge Loewy determined Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2023, and has not engaged in substantial gainful activity since

March 26, 2019. (*Id.* at 18). Judge Loewy agreed Plaintiff had the following severe impairments: degenerative disc disease; right shoulder tendinosis; carpal tunnel syndrome; diabetes mellitus; hypertension; major depressive disorder; and obesity. (*Id.*) However, Judge Loewy found Plaintiff's impairments or combination of impairments did not meet or equal the level of severity required by any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 18–19.) Specifically, Judge Loewy determined Plaintiff's physical impairments failed to meet the requirements of listing 1.15, 1.16 or 1.18 (musculoskeletal disorders); any listing in the 4.00 category (cardiovascular system); SSR 14-2 or 9.00 (endocrine disorders); or SSR 19-2 (obesity). (*Id.* at 19.)

With respect to listings 1.15, 1.16, and 1.18, Judge Loewy found Plaintiff's musculoskeletal impairments did not meet the requirements, explaining:

> There is no evidence of a documented medical need for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands; or an inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements, and a documented medical need for a one-handed, handheld assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand; or an inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements. The record discussed below did not document use of an assistive device. Additionally, the claimant reported upper extremity weakness and dropping objects, but only on the right. She also denied difficulty with fine motor tasks or handwriting changes.

(*Id.* at 19.) Regarding Plaintiff's hypertension, Judge Loewy found the condition failed to meet or equal any listing in the 4.00 category because "there is no evidence of end organ dysfunction, heart disease, or heart failure." (*Id.*) Further, in evaluating Plaintiff's diabetes, Judge Loewy determined:

> SSR 14-2 p and listing 9.00B5 have been considered concerning the claimant's diabetes mellitus. Since this impairment may cause

symptoms or complications with regard to treatment similar to other impairments considered under the Listing of Impairments, [the evaluator must] consider [whether] listings 1.00, 2.00, 4.00, 5.00, 6.00, 8.00, 11.00, and 12.00 . . . meets or equals any listing for any other body system. Specifically, no listings in the 2.00 category are met or equaled because there is no evidence of listing level diabetic retinopathy. . . . [T]he listings in the 1.00 and 4.11 and 4.12 categories are not met or equaled because there has not been amputation of a digit or extremity or recurrent ulceration that has not healed following at least three months of prescribed treatment or peripheral arterial disease causing intermittent claudication and one of the other criteria in that listing. Listing 11.14 is not met because the record does not show any evidence of listing level sensory loss. Listing 5.00 is not met because the record does not show any evidence of gastroparesis. Listing 8.04 is not met because there is no evidence of extensive ulcerating skin lesions. Listing 12.00 is not met because there is no evidence of a listing level mood disorder. Finally, no listing in the 6.00 category is met or equaled because there is no evidence of listing level impairment in kidney function. Herein, the undersigned has considered SSR 14-2p and listing 9.00B5 in conjunction with these listings. The undersigned finds that the claimant has not exhibited the requisite symptoms or suffered from complications resulting from the diabetes mellitus, which would indicate that this impairment medically equals any of the above noted analogous listings for the reasons discussed below in this decision.

(*Id.*) Lastly, while there is no specific medical listing for obesity, Judge Loewy found Plaintiff's obesity, neither alone nor in combination with other impairments, medically equals a listing. (*Id.*)

Judge Loewy also determined Plaintiff failed to meet the criteria for 12.04 (depressive, bipolar, and related disorders). (*Id.* at 20–21.) Judge Loewy first considered the "Paragraph B" criteria, which contemplates whether Plaintiff's mental impairment results in one extreme or two marked limitations in a broad area of functioning. (*Id.* at 20.) The judge explained:

In understanding, remembering, or applying information, the claimant has a mild limitation. The claimant alleged in her function report that she has problems remembering to take her medication or if she took it already. She further alleged at the hearing that she hears voices that cause her to be unable to think. However, during her December 2019 consultative examination, she only exhibited mild memory retrieval deficits. The examiner also noted adequate

auditory comprehension to understand multistep instructions, and she consistently exhibited intact memory during treatment visits with her psychiatrist.

In interacting with others, the claimant has a moderate limitation. The claimant alleged during her December 2019 consultative examination that she minimally socializes with friends. She also alleged at the hearing that she has difficulty going outside and needs to get mentally prepared. However, she reported no problems getting along with others in her function report – she stated that lives with her 18-year-old son and that she has a good family that worries about her and helps her, and who she talks with and sees often. She also goes to church when she can and takes public transportation on her own.

With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. The claimant alleged she hears loud voices that make her unable to concentrate, can only pay attention for about 30 minutes, and is unable to finish what she starts. Moreover, her consultative examiner noted slowed cognitive processing during complex tasks. However, the claimant indicated that she reads, watches videos, and listens to music, all of which require some level of concentration. The claimant also reported she drives a car, shops in stores, is able to pay bills and handle a bank account and she can follow written more spoken instructions. As for adapting or managing oneself, the claimant has experienced a mild limitation. At the hearing, the claimant alleged hearing loud voices every day, visual hallucinations, and that she just daydreams most of the day. She further alleged depressive symptoms, anxiety, and skin picking during her December 2019 consultative examination. However, she also stated that she can dress, bathe, and groom herself and do simple meal prep. The claimant also reported that she prepares her own meals, cares for her 18-year-old son providing him with clothing and food, drives a car, shops in stores for groceries, is able to pay bills and handle a bank account and recently helped her elderly parents to move out of their apartment.

Because the claimant's mental impairment does not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

(*Id.*) (internal citations omitted). Judge Loewy similarly considered whether the "Paragraph C"

criteria were satisfied, and found:

> In this case, the evidence fails to establish the presence of the "paragraph C" criteria because there is no evidence that the claimant has a serious and persistent mental disorder of two or more years with evidence of both: (1) mental health treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of a mental disorder; and (2) a minimal capacity to adapt to changes to their environment or to demands that are not already part of their daily life.

(*Id.* at 21.)

Because Judge Loewy found Plaintiff failed to meet the criteria of any impairment in the listings, she continued with an assessment of Plaintiff's residual functional capacity ("RFC") during the relevant period. *(Id*. at 21–27.) Judge Loewy determined Plaintiff has the RFC to perform light work, as defined in 20 C.F.R. 404.1567(b) and 416.967(b), with limitations.[5] (*Id.* at 21.)

Judge Loewy's process was twofold: first, she considered whether there was an underlying medically determinable physical or mental impairment reasonably expected to produce Plaintiff's pain and claimed symptoms; and second, whether the intensity, persistence, and limiting effects of any symptom limit Plaintiff's work-related activities, based upon objective medical evidence and other evidence available in the record. (*Id.* at 21–22.) After consideration of the evidence, Judge Loewy found "[Plaintiff's] medically determinable impairments could reasonably be expected to

---

[5] Plaintiff *can* stand or walk with normal breaks for a total of six hours in an eight-hour work day; can sit for six hours in an eight-hour work day; apply common sense and understanding to carry out detailed but uninvolved instructions in the performance of simple routine and repetitive tasks; work in an environment free of fast-paced production requirements; work involving only simple work-related decisions, with few workplace changes; and work having no more than minimal, superficial interaction with the public. (*Id.* at 21.) Plaintiff *can frequently* lift and/or carry ten pounds and reach, handle, or finger. (*Id.*) Plaintiff *can occasionally* lift and/or carry twenty pounds; push or pull with her upper extremities; stoop; climb ramps and stairs; and interact with coworkers or supervisors. (*Id.*) However, Plaintiff can never climb ladders, ropes or scaffolds; kneel crouch, or crawl; reach overhead; or be exposed to hazardous machinery or unprotected heights. (*Id.*)

cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.* at 22.)

Specifically, Judge Loewy found the objective medical record supported that Plaintiff's physical impairments resulted in "some degree of functional limitation, but not to the extent alleged." (*Id.*) In reaching her conclusion, Judge Loewy considered the opinions of psychiatric and medical consultants, including Dr. Echo, who evaluated Plaintiff in December 2019. (*Id.* at 25–26.) Judge Loewy found the psychiatric consultants' opinion to be persuasive to the extent they opined Plaintiff had moderate functioning in concentrating, persisting or maintaining pace and mild functioning in understanding, remembering, or applying information. (*Id.*) She found Dr. Echo's opinion persuasive only as to Plaintiff's limitation to simple, routine work, but found the medical consultant's opinion unpersuasive and unsupported by the record, which showed Plaintiff was reduced to a range of light work, as opposed to medium work with postural limitations. (*Id.*)

Judge Loewy found the opinion of Plaintiff's treating physician, Dr. Patel, to be inconsistent with the evidence, which demonstrated no significant objective findings of the stated limitations. (*Id.*) However, she found Dr. Babu's opinion to be persuasive and consistent with the evidence, which showed Plaintiff improved after a short period of time. (*Id.*) Lastly, Judge Loewy considered but rejected Ms. Coleman's "vague" opinion as unpersuasive, as her findings were not supported by clinical or mental assessments, as she merely reported what Plaintiff stated to her. (*Id.*)

Overall, Judge Loewy determined, when considered as a whole, the evidence reasonably supported a finding that Plaintiff is limited by her impairments, but those limitations are adequately

accommodated by the assigned RFC assessment. (*Id.* at 26–27.) Specifically, Judge Loewy reasoned:

> In sum, [Plaintiff] alleges that her medically determinable impairments preclude her from sustaining regular and continuous work. However, the nature, scope, and findings from her longitudinal treatment records are not fully supportive of the intensity or persistence of her subjective allegations. As discussed in the foregoing, the medical evidence reflects that, besides her cervical fusion, [Plaintiff's] treatment has been limited and conservative. Additionally, although it is not substantial gainful activity, the work activity discussed [herein] still speaks to the fact that she has been working regularly since the alleged onset date. Furthermore, [Plaintiff] was caring for her disabled brother until June 2019, which also could be considered work that was gainful activity for wages. The record further demonstrates that [Plaintiff's] mental impairments improved with treatment and she had many physical examinations without significant abnormalities.

(*Id.*) (internal citations omitted).

Ultimately, Judge Loewy determined Plaintiff was incapable of performing any past relevant work as either a retail store manager, carrying a SVP of 7, or general hardware salesperson, carrying a SVP of 4, both performed at a medium level of exertion. (*Id.* at 27.) A vocational expert testified that a hypothetical individual with the same RFC as Plaintiff, would be unable to perform Plaintiff's past relevant work. (*Id.*) Accordingly, Judge Loewy found Plaintiff was unable to perform her past relevant work as actually or generally performed. (*Id.*)

Considering all the evidence in the record, including Plaintiff's age, education, work experience, and RFC, Judge Loewy determined there are "jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (*Id.*) Judge Loewy considered the above factors against the Medical-Vocational Guidelines at 20 C.F.R. Part 404, Subpart P, Appendix 2, to determine whether Plaintiff could perform all or substantially all of the exertional demands at a given level of exertion, and therefore, whether Plaintiff was "disabled" or "not disabled" according

to Plaintiff's specific vocational profile. If Plaintiff could not perform substantially all of the exertional demands of work at a given level of exertion or has non-exertional limitations, the medical-vocational rules provide a framework for decision-making, unless there is a rule that directs a conclusion of "disabled" without considering the limitations. (*Id.* at 27–28.) If Plaintiff has solely non-exertional limitations, the medical-vocational rules also provide a framework for decision-making. (*Id.* at 28.)

Here, Plaintiff's ability to perform all or substantially all of the requirements of "light work" has been impeded by additional limitations, and therefore, Judge Loewy asked the vocational expert to opine as to how those limitations erode the unskilled light occupational base or, in other words, whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. (*Id.*) The vocational expert testified Plaintiff would be able to perform the requirements of representative occupations such as: (1) Shipping and Receiving Weigher, DOT 222.387-074, light and unskilled – SVP 2; (2) Inspector Hand Packager, DOT 559.687-074, light and unskilled – SVP 2; and (3) Marker, DOT 209.587-034, light and unskilled – SVP 2. (*Id.*) Judge Loewy found this conclusion consistent with the information contained in the Dictionary of Occupational Titles ("DOT"), and therefore, determined Plaintiff was "not disabled" under the framework of the rules and was capable of making a successful adjustment to other work that exists in significant numbers in the economy. (*Id.*)

## II.   STANDARD OF REVIEW

On a review of a final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir.

2001). The Commissioner's decisions regarding questions of fact are deemed conclusive by a reviewing court if supported by "substantial evidence" in the record. 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003). The Supreme Court reaffirmed this understanding of the substantial evidence standard in *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). To determine whether an administrative law judge's decision is supported by substantial evidence, this Court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). "Courts are not permitted to re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Accordingly, this Court may not set an ALJ's decision aside, "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

## III.   THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

Under the Act, the Social Security Administration is authorized to pay Social Security Insurance to "disabled" persons. 42 U.S.C. § 1382(a). A person is "disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity,

> only if his physical or mental impairment or impairments are of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience, engage
> in any other kind of substantial gainful work which exists in the

18

> national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated under the Act establish a five-step process for determining whether a claimant is disabled for purposes of disability insurance. 20 C.F.R. § 404.1520.[6] First, the ALJ determines whether the claimant has shown he or she is not currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b); *see Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 140–41. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). These activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and

---

[6] Regulations for disability insurance and supplemental income benefits are virtually identical. For the purposes of this appeal, further citations will only be made to the disability insurance benefits regulations regarding disability evaluation, 20 C.F.R. § 404.1501, *et seq.* The parallel supplemental income benefits regulations are found under 20 C.F.R. § 416.901, *et seq.*

> (6) Dealing with changes in a routine work setting.

*Id.* A claimant who does not have a severe impairment is not considered disabled. 20 C.F.R. § 404.1520(c); *see Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. § 404, Subpart P, App'x 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates his or her impairments are equal in severity to, or meet, those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See* 20 C.F.R. § 404.1520(d); *see also Bowen*, 482 U.S. at 141. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526. If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams v. Sullivan*, 970 F.2d, 1178, 1186 (3d Cir. 1992).

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the RFC to perform his or her past relevant work. 20 C.F.R. § 404.1520(e)–(f); *Bowen*, 482 U.S. at 141. Step four involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted). When determining RFC, an ALJ's consideration of medical opinion evidence is subject to the framework articulated at Section 404.1527 (for claims filed before March 27, 2017) or Section 404.1520c (for claims filed after March 27, 2017).

The claimant is not disabled if his RFC allows him to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). However, if the claimant's RFC prevents him from doing so, an administrative law judge proceeds to the fifth and final step of the process. *Id.* The final step requires the administrative law judge to "show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1520(a)(4)(v). In doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled." *Id.*; 20 C.F.R. § 404.1523. Notably, an administrative law judge typically seeks the assistance of a vocational expert at this final step. *Id.* (citation omitted).

The claimant bears the burden of proof for steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Neither side bears the burden of proof for step three "[b]ecause step three involves a conclusive presumption based on the listings[.]" *Id.* at 263 n.2; *see Bowen*, 482 U.S. at 146–47 n.5. An administrative law judge bears the burden of proof for the fifth step. *Id.* at 263.

For the first four steps, the harmless error doctrine[7] requires a plaintiff to show: 1) an error

---

[7] The Supreme Court explained its operation in a similar procedural context in *Shinseki v. Sanders*, which concerned review of a governmental agency determination. 556 U.S. 396, 408–11 (2009). The Supreme Court stated: "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Id.* at 409. In such a case, "the claimant has the 'burden' of showing that an error was harmful." *Id.* at 410.

occurred; and 2) but for that error, she might have proven her disability. *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). In other words, when appealing a decision at the first four steps, a court considers whether the plaintiff articulated a basis for a decision in her favor, based on the existing record. If the plaintiff cannot, it is unlikely she will meet her burden of showing an error was harmful. *See e.g.*, *Lippincott v. Comm'r of Soc. Sec.*, 982 F. Supp. 2d 358, 380 (D.N.J. 2013) (finding an ALJ's error harmless); *Powers v. Comm'r of Soc. Sec.*, Civ. A. No. 19-21970, 2021 U.S. Dist. LEXIS 62340, at *20 (D.N.J. Mar. 31, 2021) (finding the plaintiff had not demonstrated she was prejudiced by the ALJ's decision and had not shown an error occurred amounting to harm).

The court's review of legal issues within this appeal is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes*, 228 F.3d at 262. Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). Substantial evidence also "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and internal quotation marks omitted). When substantial evidence exists to support the Commissioner's factual findings, this Court must abide by those determinations. *See id.* (citing 42 U.S.C. § 405(g)).

## IV.   DECISION

Plaintiff alleges the denial of her social security disability claim was not based on substantial evidence and violated the Commissioner's own regulations and rulings, specifically arguing:

> 1. Judge Loewy erred at Step 3 in not concluding that Plaintiff's impairment met or equaled listing 12.04;

2. Judge Loewy's RFC assessment is not based upon substantial evidence, because Judge Loewy improperly discredited virtually all of the medical opinion evidence;

3. Judge Loewy improperly rejected Plaintiff's complaints of pain and other restrictions.

(ECF No. 7 at 16–24.) In response, the Commissioner submits that substantial evidence supports Judge Loewy's decision that Plaintiff was not disabled. (ECF No. 8 at 7–19.) Specifically, the Commissioner contends: (1) Plaintiff did not satisfy listing 12.04; and (2) the RFC determination was proper, based upon a proper evaluation of the medical opinion evidence and Plaintiff's subjective complaints. (*Id*.) The Court agrees with the Commissioner that Judge Loewy's decision was based on substantial evidence in the record, and therefore, the decision is affirmed.

### A. Plaintiff's Mental Impairments Do Not Meet The Criteria Set Forth At Listing 12.04.

Plaintiff alleges Judge Loewy erred in finding Plaintiff does not have an impairment, or combination of impairments that meets or medically equals the severity of the relevant listing, specifically, listing 12.04 for depressive, bipolar, and related disorders. (ECF No. 7 at 16–20.) To qualify as a mental impairment under listing 12.04, the alleged disability must satisfy the requirements of Paragraphs A and B, or alternatively, the requirements of Paragraphs A and C. 20 C.F.R. § 404, Subpart P, App'x 1. Here, Plaintiff claims she meets the criteria of listing 12.04, Paragraphs A and B. (ECF No. 7 at 16–20.)

To meet the criteria of Paragraph A, Plaintiff must provide medical documentation of depressive disorder or bipolar disorder. 20 C.F.R. § 404, Subpart P, App'x 1. To demonstrate Plaintiff struggles with depressive disorder, she must present documentation showing five of the following characteristics, including: depressed mood; diminished interest in almost all activities; appetite disturbance with change in weight; sleep disturbance; observable psychomotor agitation

or retardation; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; or thoughts of death or suicide. *Id.*

To satisfy the criteria of Paragraph B under listing 12.04, Plaintiff must demonstrate either an "[e]xtreme limitation of one, or marked limitation of two" of the ability to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; or (4) adapt or manage oneself. *Id.* A "marked limitation" means Plaintiff's functioning is "independently, appropriately, effectively, and on a sustained basis . . . seriously limited." (*Id.*) An "extreme limitation" means Plaintiff is "not able to function in this area independently, appropriately, effectively, and on a sustained basis." (*Id.*)

Plaintiff alleges she meets the criteria of Paragraph A, because the medical source statement of her long-time psychotherapist, Amy Coleman, LCSW, notes more than five or more symptoms above, including depressed mood; diminished interest; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; and thoughts of death or suicide. (ECF No. 7 at 18.) With respect to the Paragraph B criteria, Plaintiff argues the medical evidence clearly supports her marked limitation in all four areas of functioning. (*Id.*)

Specifically, Plaintiff cites a consultative psychological examination, wherein the examiner noted Plaintiff's "frequent psychotic features of auditory as well as visual hallucinations," and diagnosed her with major depressive disorder with psychotic features. (*Id.*) The examiner concluded Plaintiff would have "difficulty maintaining a reasonable pace in a consistent manner." (*Id.*) Further, Plaintiff cites the treatment notes of HUMC, which confirmed Plaintiff's frequent auditory and visual hallucinations, interfering with her concentration necessary to perform the activities of daily living. (*Id.* at 19.) Lastly, Amy Coleman, LCSW, indicated Plaintiff's hallucinations would make it difficult for her to get through a full workday, and would

spend up to 40% of the day dealing with normal work stress. (*Id.*) Accordingly, Plaintiff argues the medical evidence, combined with Plaintiff's testimony regarding her limitations, demonstrates Judge Loewy's decision on listing 12.04 was not based on substantial evidence. (*Id.*)

The Commissioner submits Judge Loewy's decision on listing 12.04 is supported by substantial evidence in the record. (ECF No. 8 at 9–12.) Specifically, the Commissioner points to evidence in the record supporting Judge Loewy's determination that Plaintiff had mild limitations in understanding, remembering, or applying information; moderate limitations in Plaintiff's interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and mild limitations in adapting or managing oneself. (*Id.* at 10–11.) Further, the Commissioner contends that even if Judge Loewy erred in her determination, Plaintiff cannot meet listing 12.04 because Plaintiff is clearly capable of engaging in work activity, as evidenced by her part-time positions during 2019 and 2020. (*Id.* at 11–12.)

As to listing 12.04, Judge Loewy found Plaintiff did not meet or equal the criteria, as she demonstrated only mild or moderate limitations in the designated areas of functioning. (Hearing Tr. at 20.) In finding Plaintiff had a mild limitation in understanding, remembering, or applying information, Judge Loewy cited Dr. Echo's consultative examination, wherein Plaintiff demonstrated only mild memory retrieval deficits. (*Id.*) Judge Loewy also made reference to Plaintiff's subsequent treatment visits with her psychiatrist at HUMC, wherein Plaintiff consistently demonstrated intact memory. (*Id.*) As for Judge Loewy's finding that Plaintiff had a moderate limitation in interacting with others, the decision referenced both Dr. Echo's consultative examination, wherein Plaintiff said she minimally socializes with friends and can go outside when mentally prepared, as well as Plaintiff's own testimony about her interactions with family, attendance at church, and use of public transportation. (*Id.*) In finding Plaintiff had a moderate

limitation in concentrating, persisting, or maintaining pace, Judge Loewy noted the consultative examiner's report that Plaintiff had slowed cognitive processing during complex tasks, as well as Plaintiff's own testimony that she reads, watches videos, drives a car, shops in stores, and manages her bank account. (*Id.*) Lastly, as for the conclusion that Plaintiff had a mild limitation in adapting or managing oneself, Judge Loewy, again, cited reports and records from Plaintiff's treatment providers, as well as Plaintiff's own testimony, to find Plaintiff was able to take care of herself and others to a certain extent, despite her reported symptoms. (*Id.*)

Judge Loewy's determination on this third step of the analysis is supported by "substantial evidence" in the record. *See Biestek*, 139 S. Ct. at 1154; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003) (defining substantial evidence as "more than a mere scintilla of evidence but may be less than a preponderance"). Indeed, Judge Loewy, like Plaintiff, cited to both Dr. Echo's consultative examination and HUMC treatment records in reaching the decision, as well as Plaintiff's own testimony and description of her symptoms and abilities in the Function Report. (Hearing Tr. at 19.) The decision considered not only the treating and consultative practitioner's impressions, but also their notes regarding Plaintiff's demeanor, interactions, and apparent mental state, as well as how each notation in their records supported or contradicted the physicians' conclusions. (*Id.*) For example, while Plaintiff reported to Dr. Echo during her examination that she minimally socializes with friends, she expressed in her Function Report that she had no problem getting along with others. (*Id.*) Further, despite claiming to hear voices rendering her unable to think at the June 2021 hearing, Plaintiff consistently demonstrated an ability to understand instructions and exhibited intact memory during several treatment visits. (*Id.*) Accordingly, Judge Loewy's determinations regarding Plaintiff's limitations are supported by substantial evidence and are sufficient to support the conclusion that Plaintiff's mental impairment

26

did not satisfy listing 12.04. *See Richardson*, 402 U.S. at 401; *Newell*, 347 F.3d at 545.

Also notably, Plaintiff was able to maintain part-time employment for two years after the alleged onset date, and therefore, is capable of performing gainful work. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) ("The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'"). Plaintiff's ability to work part-time on a sustained basis, coupled with the substantial evidence in the record, supports Judge Loewy's conclusion that Plaintiff only had mild or moderate limitations under listing 12.04. *See Tucker v. Saul*, No. 18-13522, 2020 WL 6255420, *15 (D.N.J. Oct. 23, 2020); *Petravich v. Colvin*, No. 14-1602, 2016 WL 1117610, *3 (W.D. Pa. Mar. 21, 2016).

### B.  Plaintiff Has The Residual Functional Capacity To Perform Light Work With Limitations.

Plaintiff next argues Judge Loewy's assessment of her RFC was not based upon substantial evidence in the record. (ECF No. 7 at 20–22.) Plaintiff contends Judge Loewy discredited virtually all of the medical opinion evidence provided and failed to rely on any medical evidence in support of her conclusion. (*Id.*) The Commissioner disagrees, submitting Judge Loewy's RFC determination was based on substantial evidence in the record. (ECF No. 8 at 13–16.) Regarding the medical opinion evidence, the Commissioner contends Judge Loewy's evaluation of the medical opinions was proper and in accordance with the recently-revised controlling regulations, which change the way an administrative law judge must account for the testimony. (*Id.*)

In determining Plaintiff's RFC, Judge Loewy first considered whether Plaintiff demonstrated an underlying medically determinable physical or mental impairment reasonably expected to produce Plaintiff's symptoms, and then, whether the intensity, persistence, and limiting effects of those symptoms affect Plaintiff's ability to do work-related activities. (Hearing

Tr. at 21–22). Judge Loewy considered Plaintiff's subjective testimony regarding her condition, the objective medical evidence in the record, and the opinion evidence of consultative examiners and treatment providers, and ultimately concluded:

> After careful consideration of the evidence, the undersigned finds that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

> . . . .

> In sum, [Plaintiff] alleges that her medically determinable impairments preclude her from sustaining regular and continuous work. However, the nature, scope, and findings from her longitudinal treatment records are not fully supportive of the intensity or persistence of her subjective allegations. As discussed in the foregoing, the medical evidence reflects that, besides her cervical fusion, [Plaintiff's] treatment has been limited and conservative. Additionally, although it is not substantial gainful activity, the work activity discussed [herein] still speaks to the fact that she has been working regularly since the alleged onset date. Furthermore, she was caring for her disabled brother until June 2019, which also could be considered work that was gainful activity for wages. The record further demonstrates that [Plaintiff's] mental impairments improved with treatment and she had many physical examinations without significant abnormalities.

> When considered as a whole, the evidence reasonably supports a finding that [Plaintiff] is limited by her impairments, but those limitations, as well as her subjective complaints, are adequately accommodated by the assigned [RFC] assessment.

(*Id.* at 21–27.)

Plaintiff's RFC is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The RFC assessment is based on all the relevant evidence in the record, *id.*, and descriptions and observations of Plaintiff's limitations from her impairments provided by Plaintiff and other persons, 20 C.F.R. § 404.1545(a)(3); 20 C.F.R. § 404.1529. As for Plaintiff's alleged mental

impairments, the nature and extent of Plaintiff's limitations and restrictions is assessed first and is followed by a determination of her RFC for work activity on a regular and continuing basis. 20 C.F.R. § 404.1545(c). As for Plaintiff's alleged physical impairments, Plaintiff's statements about pain or other symptoms, including intensity and persistence, will not alone establish disability. There must be medical signs and laboratory findings which show medical impairment(s) that could reasonably be expected to produce the pain alleged. 20 C.F.R. § 404.1529(a).

Judge Loewy must explain her reasoning such that the RFC determination is amenable to meaningful review. *Burnett*, 220 F.3d at 119. However, she is not required "to use particular language or adhere to a particular format in conducting [the] analysis," and the decision must be "read as a whole" to determine whether she considered the appropriate factors in reaching her conclusion. *Jones*, 364 F.3d at 505.

The Court finds that substantial evidence supports Judge Loewy's determination regarding Plaintiff's RFC. *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). When read as a whole, it is evident Judge Loewy considered and incorporated into her reasoning Plaintiff's testimony, treatment history, and the findings of various treating and consultative physicians, which are consistent with the decision. (Hearing Tr. at 21–27.) The evidence revealed Plaintiff struggles with some degree of functional limitation, but not to the extent alleged.

After Plaintiff's cervical discectomy and fusion in 2019, Plaintiff periodically complained of neck, back, bilateral arm, right shoulder, arm and elbow pain, and bilateral hand pain. (*Id.* at 22–24.) During that period, she underwent surgery on her left arm and was diagnosed with carpal tunnel syndrome. (*Id.*) However, while Plaintiff was being treated for her impairments, physical examinations repeatedly demonstrated essentially normal range of motion, strength, and sensation,

29

with no significant abnormalities.[8] (*Id.*) The required treatments were primarily non-intrusive, including medications, physical therapy, and steroid injections. (*Id.*) Plaintiff continuously reported feeling better upon treatment. (*Id.*)

Similarly, Plaintiff reported to her physicians and during the administrative proceedings symptoms of depression including auditory and visual hallucinations, distorted perceptions, restless sleep, anxiety, skin picking, and lack of energy. (*Id.* at 24.) However, Plaintiff also reported:

> she can drive; take public transportation on her own; dress, bathe, and groom herself; gets assistance from family members with household chores; and can do simple meal prep. She also minimally socializes with friends, does not engage in hobbies, spends her day watching videos and listening to music, and can keep track of her medications.

(*Id.*) Her examinations have revealed "goal-directed thoughts; adequate auditory comprehension, insight, and judgment; limited affect; and a mood notable for dysphoria and tearfulness," and subsequently, "cooperative and attentive behavior; depressed mood; intact memory, concentration, insight, and judgment; and normal intelligence." (*Id.*) Most importantly, in records from 2021, Plaintiff continuously reported a decrease of her negative symptoms upon taking her prescribed medications. (*Id.*)

Judge Loewy considered the entirety of the evidence, made specific findings of fact, and resultingly concluded Plaintiff is limited to the modest demands of light work, with limitations, when comparing her condition to the demands of that level of employment. (*Id.* at 21.) Plaintiff's disagreement with the conclusion does not compel reversal here because the conclusions of the

---

[8] At some visits, Plaintiff demonstrated abnormalities like upper extremity weakness, tenderness, and decreased range of motion, but her physical examinations during this period were overwhelmingly normal.

ALJ are based upon more than a "mere scintilla" of relevant evidence. *See Burnett*, 220 F.3d at 118.

Plaintiff also contends Judge Loewy erroneously discredited "virtually all of the medical opinion evidence," contrary to case law, which precludes a Court from making speculative inferences based on its own credibility judgments, speculation or lay opinion. (ECF No. 7 at 20.) However, Plaintiff attempts to hold Judge Loewy to the wrong standard.

For claims filed before March 27, 2017, Section 404.1527 outlines the framework for consideration of medical opinions and prior administrative medical findings in assessing a claimant's RFC. 20 C.F.R. § 404.1527. Under these "old" regulations, opinions from treating physicians are given preference. *Id.* However, Section 404.1520c is effective for cases filed on or after March 27, 2017, as Plaintiff's claims were, and, accordingly, these "new" regulations apply here.

Section 404.1520c "eliminated the hierarchy of medical source opinions that gave preference to treating sources." *David K. v. Kijakazi*, Civ. A. No. 20-12419, 2022 U.S. Dist. LEXIS 13989, at *21 (D.N.J. Jan. 25, 2022). Under the new regulations, the following five factors are considered for all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c). The most important factors when evaluating the persuasiveness of medical opinions are supportability and consistency. 20 C.F.R. § 404.1520c(a). Supportability means the extent to which a medical source supports her medical opinion by

explaining the relevant objective medical evidence. 20 C.F.R. § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim. 20 C.F.R. § 404.1520c(c)(2). When articulating how the ALJ considered medical opinions and prior administrative medical findings in a particular case, the ALJ is *specifically* required by the regulations to "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the] determination or decision." 20 C.F.R. § 404.1520c(b)(2). The ALJ must explain his or her reasoning such that the RFC determination is amenable to meaningful review. *Burnett*, 220 F.3d at 119.

Here, Judge Loewy properly considered and articulated the supportability and consistency factors for the opinions and findings of Plaintiff's consultative and treating physicians. Indeed, Judge Loewy cited relevant medical records and explained how those records complemented or contrasted the findings. For example, Judge Loewy found Dr. Echo's opinion "generally consistent" with her examination notes, "which reflect slowed cognitive processing particularly for more mentally demanding tasks." (Hearing Tr. at 25.) However, Judge Loewy found it "inconsistent" with other evidence in the record, which demonstrated a moderate limitation in social functioning, as evidenced by Plaintiff's difficulty going outside. (*Id.*) Therefore, Judge Loewy considered Dr. Echo's opinion to the extent it held Plaintiff would be limited to simple routine work. (*Id.*)

In challenging Judge Loewy's consideration of the medical opinions, Plaintiff failed to argue under the applicable standard. However, even if Plaintiff argued under the correct standard, this Court is satisfied that Judge Loewy considered factors set forth in Section 404.1520c. Specifically, as for each medical opinion presented to Judge Loewy, she evaluated the two crucial

factors of supportability and consistency, explaining her reasoning in such a way as to make her decision amenable to meaningful review. *See* 20 C.F.R. § 404.1520c(a), (b)(2); *Burnett*, 220 F.3d at 119. Accordingly, Judge Loewy's decision, finding Plaintiff has the RFC to perform work at the light level, with limitations, is supported by substantial evidence in the record. Further, to the extent Plaintiff argues Judge Loewy overlooked any medical opinion evidence or other evidence in the record, the Court finds Plaintiff failed to meet her burden of demonstrating the overlooked evidence would have changed the outcome of the decision.

### C.  Judge Loewy Appropriately Considered Plaintiff's Complaints Of Pain.

Lastly, Plaintiff claims Judge Loewy erred by rejecting Plaintiff's complaints of pain, which she contends are supposed to be given serious consideration, regardless of whether they are not fully confirmed by objective evidence, but especially where the complaints are supported by other evidence in the record. (ECF No. 7 at 22–24.) The Commissioner responds that Judge Loewy complied with the regulations and agency policy in considering Plaintiff's subjective complaints, and rightly concluded Plaintiff had medically determinable impairments, but not at the intensity, persistence, or limits alleged by Plaintiff.  (ECF No. 8 at 16–18.)

Section 404.1529(a) requires an administrative law judge to consider a claimant's statement of symptoms, including statements about pain resulting from those symptoms. However, those statements alone are not sufficient to establish a physical or mental impairment or disability. *Id.* In evaluating the intensity and persistence of a claimant's symptoms, the administrative law judge considers "all of the available evidence, including . . . medical history, the medical signs and laboratory findings, and statements about how [the] symptoms affect [the claimant]." *Id.* Only then will the determination be made regarding the extent to which the alleged functional limitations affect a claimant's ability to work. *Id.*

As set forth by Section 404.1529(b) and (c), Judge Loewy's consideration was twofold: first, she considered whether there was an underlying medically determinable physical or mental impairment reasonably expected to produce Plaintiff's pain and symptoms; and second, whether the intensity, persistence, and limiting effects of any symptom limit Plaintiff's capacity for work, based upon objective medical evidence and other evidence available in the record. Ultimately, Judge Loewy concluded that the evidence, as a whole, including Plaintiff's subjective complaints, demonstrated Plaintiff was, indeed, limited by her impairments, but those impairments could be accommodated by the assigned RFC. (Hearing Tr. at 27.) In reaching that decision, Judge Loewy recounted Plaintiff's testimony at several points in the decision, and adequately weighed her statements against other evidence in the record. *See Chandler*, 667 F.3d at 359 ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations."). Because Judge Loewy engaged in the proper analysis, and sufficiently referenced not only Plaintiff's own statements, but other evidence in the record supporting or negating those statements, this Court finds the decision was based on substantial evidence, and is therefore, affirmed. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Biestek*, 139 S. Ct. at 1154.

## V.   CONCLUSION

For the reasons set forth above, the Commissioner's decision is **AFFIRMED**.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Date: September 18, 2023